UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO:

FRANK R. GUIDIDAS, JEAN MATTES,
LISA BRUSGER, CAROLYN BARTLETT,
KATHRYN J. BRONSON, LORI CLEMONS,
KEVIN M. CORRIGAN, MICHELLE
CRAWFORD, SUSAN FEEHLEY,
LYDIA A. FREYEISEN, ALEXANDER
GAUDIO, CANDANCE E. HAGADORN,
LEANNE HANSON, JESSICA IVANENKO,
JULIA KOZEL, RHONDA J. LEBLANC,
DESIREE MILLER, ALBERTA MOORE,
JACK SHULTZ, FEINA STEKOL,
CLAUDETTE SWETIC, JUDITH
WATERHOUSE, RITA WILLIAMS,
MOYEAN R. WILSON, RENEE YODER, and
FRANK GUIDIDAS on behalf of themselves and
all others similarly situated,

                            Plaintiffs,

v.

COMMUNITY NATIONAL BANK
CORPORATION n/k/a MOODY BUSINESS
PARTNERS, INC., a Florida corporation;
ROGER L. BALDINGER; JOSEPH R.
KONDISKO; ALLANA M. KONDISKO,
WILLIAM G. MCKELVEY; JEANNE
W. MCKELVEY; and CHARLES K.
GRAHAM,

                            Defendants.
_____/

## PLAINTIFFS' CLASS ACTION COMPLAINT FOR VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)

For their Class Action Complaint for Violation of the Employee Retirement

Income Security Act (ERISA), Plaintiffs allege as follows:

# I. INTRODUCTION

1.      This is a class action brought by participants of the Community National Bank Corporation Employee Stock Ownership Plan (the "Plan") pursuant to §§ 502(a)(2) and (a)(3) of the Employee Retirement Security Act ("ERISA"), 29 U.S.C. §1132(a)(2) and (a)(3), against the fiduciaries of the Plan, all officers and/or directors of Community National Bank Corporation n/k/a Moody Business Partners, Inc., for violations of ERISA.

2.      The Plan is a retirement plan sponsored by Community National Bank Corporation n/k/a Moody Business Partners, Inc. ("CNBC").

3.      Plaintiffs' claims arise from the failure of Defendants, who are/were fiduciaries of the Plan, to act solely in the interest of the participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plans' assets during the period of time January 1, 2005 to present (the "Class Period").

4.      Specifically, Plaintiffs allege in Count I that the Defendants that were responsible for the investment of the assets of the Plan breached their fiduciary duties to Plaintiffs in violation of ERISA by failing to prudently and loyally manage the Plan's investments in CNBC stock.  In Count II, Plaintiffs allege that the Defendants who were responsible for communicating with participants regarding the Plan's assets failed to provide participants of the true risks of investing their retirement savings in CNBC stock. In Count III, Plaintiffs allege that the Defendants who were responsible for the selection, removal, and thus, monitoring of the Plan's other fiduciaries failed to properly monitor

the performance of their fiduciary appointees and remove and replace those whose performance was inadequate.

5.     As more fully explained below, during the Class Period, Defendants imprudently permitted the Plan to hold and acquire thousands of dollars in CNBC stock. They did so despite the fact that Defendants knew or should have know that CNBC and/or its wholly owned subsidiaries were engaging in activities such as self-interested lending and practices designed to render its banking operations unsound and unsafe as determined by federal bank regulators; activities which were unsafe and imprudent. As a result, CNBC stock no longer was a prudent and appropriate investment for participants' retirement savings. Defendants' breaches caused the Plan to incur enormous losses.

6.     This action is brought on behalf of the Plan and seeks losses to the Plan for which Defendants are personally liable pursuant to ERISA §§409 and 502(a)(2), 29 USC §§ 1109 and 1132(a)(2).   In addition, under §502(a)(3) of ERISA, 29 U.S.C. §502(a)(3), Plaintiffs seek other equitable relief from Defendants, including without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, equitable accounting/tracing, and other monetary relief.

7.     As a matter of substantive law, ERISA §§409(a) and 502(a)(2) authorize participants such as Plaintiff Frank Guididas to sue in a representative capacity for losses suffered by the Plan as a result of the breaches of fiduciary duty.   An appropriate procedural vehicle to assert such claims is a class action pursuant to Fed. R. Civ. P. 23, and Plaintiff Frank Guididas brings this action as a class action on behalf of all participants and beneficiaries of the Plan during the Class Period.

3

8.      In addition, because information and documents on which Plaintiffs' claims are based are, for the most part, solely in Defendants' possession, certain of Plaintiffs' allegations are by necessity upon information and belief.  At such time as Plaintiffs have had the opportunity to conduct discovery, Plaintiffs will, to the extent necessary and appropriate, amend this Complaint, or, if required, seek leave to amend, to assert such other additional facts as are discovered that further support their claims.

## II. JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and ERISA §502(e)(1), 29 U.S.C. §1132(e)(1).

10.      ERISA provides for nationwide service of process. ERISA §502(e)(2), 29 U.S.C. §1132(e)(2).  All Defendants are either residents of the United States or subject to service in the United States and this Court therefore has personal jurisdiction over them. Also, this Court has personal jurisdiction over them pursuant to Fed.R.Civ.P. 4(k)(1)(A) because they would all be subject to the jurisdiction of a court of general jurisdiction in the State of Florida.

11.      Venue is proper in this district pursuant to ERISA §502(e)(2), 29 U.S.C.§1132(e)(2), because the Plan is administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, and/or some Defendants reside and/or transact business in this district.

## III. PARTIES

12.  Plaintiff Frank R. Guididas is a resident of Florida. He worked for a subsidiary of CNBC from June 2000 to July 2004 and was a participant in the Plan.  Mr. Guididas is 65 years old.

13.  Plaintiff Jean Mattes is a resident of Florida. She worked for a subsidiary of CNBC from December 1998 to April 2008 and was a participant of the Plan.  Ms. Mattes is 65 years old.

14.  Plaintiff Lisa Brusger is a resident of Florida.  She worked for a subsidiary of CNBC from February 1988 to June 2008 and was a participant of the Plan.  Ms. Brusger is 50 years old.

15.  Plaintiff Carolyn Bartlett is a resident of Florida.  She worked for a subsidiary of CNBC from January 1988 to May 2007 and was a participant of the Plan. Ms. Bartlett is 69 years old.

16.  Plaintiff Kathy J. Bronson is a resident of Florida.  She worked for a subsidiary of CNBC from February 1988 to September 2007 and was a participant of the Plan.  Ms. Bronson is 67 years old.

17.  Plaintiff Lori Clemons is a resident of Florida.  She worked for a subsidiary of CNBC from December 2005 to August 2009 and was a participant of the Plan.  Ms. Clemons is 42 years old.

18.  Plaintiff Kevin M. Corrigan is a resident of Florida.  He worked for a subsidiary of CNBC from June 2000 to July 2004 and was a participant of the Plan.  Mr. Corrigan is 53 years old.

19.     Plaintiff Michelle Crawford is a resident of Florida.   She worked for CNBC from September 1993 to August 2009 and was a participant of the Plan.  Ms. Crawford is 50 years old.

20.     Plaintiff Sue Feehley is a resident of Florida.  She worked for a subsidiary of CNBC from January 2005 to December 2009 and was a participant of the Plan.  Ms. Feehley is 56 years old.

21.     Plaintiff Lydia A. Freyeisen is a resident of Florida.  She worked for a subsidiary of CNBC from on or about August 1990 to May 2005 and was a participant of the Plan.  Ms. Freyeisen is 58 years old.

22.     Plaintiff Alexander Gaudio is a resident of Florida.   He worked for a subsidiary of CNBC from August 2005 to December 2009 and was a participant of the Plan.  Mr. Gaudio is 55 years old.

23.     Plaintiff Candance E. Hagadorn is a resident of Florida.  She worked for CNBC from August 2000 to August 2009 and was a participant of the Plan.   Ms. Hagadorn is 50 years old.

24.     Plaintiff Leanne Hanson is a resident of Florida.   She worked for a subsidiary of CNBC from February 1988 to August 2009 and was a participant of the Plan.  Ms. Hanson is 65 years old.

25.     Plaintiff Jessica Ivanenko is a resident of Florida.   She worked for a subsidiary of CNBC from June 2005 to January 2009 and was a participant of the Plan.  Ms. Ivanenko is 25 years old.

26.     Plaintiff Julia Kozel is a resident of Florida.  She worked for a subsidiary of CNBC from September 1998 to August 2009 and was a participant of the Plan.  Ms. Kozel is 73 years old.

27.     Plaintiff Rhonda J. Leblanc is a resident of Florida.  She worked for a subsidiary of CNBC from February 1999 to August 2009 and was a participant of the Plan.  Ms. LeBlanc is 43 years old.

28.     Plaintiff Desiree Miller is a resident of Florida.  She worked for a subsidiary of CNBC from October 2007 to December 2009 and was a participant of the Plan.  Ms. Miller is 50 years old.

29.     Plaintiff Alberta Moore is a resident of Florida.  She worked for a subsidiary of CNBC from September 1997 to December 2009 and was a participant of the Plan.  Ms. Moore is 66 years old.

30.     Plaintiff Jack Shultz is a resident of Florida.  He worked for a subsidiary of CNBC from August 1998 to August 2009 and was a participant of the Plan.  Mr. Shultz is 69 years old.

31.     Plaintiff Feina Stekol is a resident of Florida.  She worked for a subsidiary of CNBC from May 2007 to December 2009 and was a participant of the Plan.  Ms. Stekol is 56 years old.

32.     Plaintiff Claudette Swetic is a resident of Florida.  She worked for CNBC from March 1994 to August 2009 and was a participant of the Plan.  Ms. Swetic is 67 years old.

33. Plaintiff Judith Waterhouse is a resident of Florida. She worked for CNBC from October 1988 to June 2005 and was a participant of the Plan. Ms. Waterhouse is 70 years old.

34. Plaintiff Rita Williams is a resident of Florida. She worked for a subsidiary of CNBC from on or about 2007 to October 2008 and was a participant of the Plan. Ms. Williams is 46 years old.

35. Plaintiff Moyean R. Wilson is a resident of Florida. He worked for a subsidiary of CNBC from January 2000 to August 2009 and was a participant of the Plan. Mr. Wilson is 55 years old.

36. Plaintiff Renee Yoder is a resident of Florida. She worked for a subsidiary of CNBC from September 2003 to September 2010 and was a participant of the Plan. Ms. Yoder is 63 years old.

37. All of the Defendants are fiduciaries of the Plan within the meaning of ERISA and Plan documents, and all of them breached their fiduciary duties in various ways as explained herein.

38. Defendant CNBC is a Florida corporation with its principal place of business in Sarasota County, Florida. CNBC is a parent company for Community National Bank of Sarasota County, Venice, Florida ("Bank"), a national bank subject to 12 U.S.C. §3907.

39. Individual Defendants are/were all either members of CNBC's Board of Directors – the governing body of CNBC under its charter, its bylaws, and applicable

Florida law – and/or were senior management of CNBC.  All individual Defendants had exclusive control and direction over the Plan.  The individual Defendants are:

       (i)   Defendant Roger I. Baldinger ("Baldinger") served as a director of CNBC during the class period and served as Trustee for the Plan. Baldinger also served as executive vice president of the CNBC and president of Community National Bank of Sarasota County. Finally, Baldinger served as Trustee of the Plan;

       (ii)   Defendant Joseph R. Kondisko ("J.Kondisko") served as a director and chairman of CNBC during the class period. J.Kondisko also served as a Trustee of the Plan;

       (iii) Defendant Allana M. Kondisko ("A.Kondisko"), the wife of Joseph R. Kondisko, served as director of CNBC as well as secretary to the Board during the class period;

       (iv)   Defendant William G. McKelvey ("W.McKelvey") served as director of CNBC during the class period. W.McKelvey also served as a Trustee of the Plan;

       (v)   Defendant Jeanne W. McKelvey (J.McKelvey), the wife of W.McKelvey, served as director of CNBC during the class period; and,

       (vi) Defendant Charles K. Graham ("Graham") served as a director and executive vice president of CNBC during the class period. In addition, Graham served as a Trustee of the Plan, as well as a member of the administrative committee.

## IV. PLAINTIFFS' EXHAUSTION OF ADMINISTRATIVE REMEDIES

### Introduction

40.     The administrative remedy scheme for claims by Plan participants is set forth in the Plan documents.  The process is a two-step procedure.  Specifically, Section 19 of the Plan identifies the first step of the claim procedure, stating as follows:

> A Participant (or Beneficiary) who does not receive a distribution to which he believes he is entitled may present a claim to the Committee for any unpaid benefits.  All questions and claims regarding benefits under the Plan shall be acted upon by the Committee.
>
> Each Participant (or Beneficiary) who wishes to file a claim for benefits with the Committee shall do so in writing, addressed to the Committee or to the Company.  If the claim for benefits is wholly or partially denied, the Committee shall notify the Participant (or Beneficiary) in writing of such denial of benefits within ninety (90) days after the Committee initially received the benefit claim.
>
> See Exhibit A, p. 19.1.

41.     Section 19 of the Plan then sets forth the second step of the procedure, which constitutes a review of any denial of a claim. Section 19 states in pertinent part:

> Each Participant (or Beneficiary) whose claim for benefits is denied shall have the opportunity to file a written request for a full and fair review of his claim by the Committee, to review all documents pertinent to his claim and to submit a written statement regarding issues relative to his claim. Such written request for review of his claim must be filed by the Participant (or Beneficiary) within sixty (60) days after receipt of written notification of the denial of his claim.
>
> See Exhibit A, p. 19.1.

42.     In addition to the Plan itself, the Plaintiffs were provided a Participants' Handbook which was intended to explain the Plan. The May 2009 Plan Participants'

Handbook states in pertinent part that a federal suit may be instituted if the participant's claim is denied:

> You have the right to have the Committee review and reconsider your claim. Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the KSOP and do not receive them within 30 days, you may file suit in federal court . . . [i]f you have a claim for benefits, which is denied or ignored, in whole or in part, you may file suit in a state or federal court.

> See Exhibit B, p. 22.

43.     As detailed next, each named Plaintiff in this action completed the Plan's two-step administrative remedy scheme. Each claim was denied; thus, this suit may proceed.

### Plaintiff Frank Guididas' Exhaustion of Remedies

44.     On November 9, 2010, Plaintiff Frank Guididas mailed a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan. (A copy of Plaintiff Guididas' November 9, 2010 written claim is attached hereto as Exhibit C). Plaintiff Guididas' letter specifically references claims for breach of fiduciary duty by the Bank and its Board Members in their exclusive control and administration of the Plan which resulted in Plaintiff's loss of his retirement savings. The letter goes on to specifically identify how the Bank and its Board Members breached their fiduciary duties to properly administer the Plan and then demands payment for the value of Plaintiff's shares at $52.00 per share. See Exhibit C.

45.     On March 2, 2011, the Plan Administrative Committee, through its lawyers, responded to Plaintiff Guididas' written claim, denying it on grounds that "no

breach of fiduciary duty under the Employee Retirement Income Security Act has been committed" and noting the existence of a review process:

> **Therefore, on behalf of the Committee, your claim is denied pursuant to Sections 1, 18 and 19 of the Community National Bank Corporation KSOP Plan.**
>
> **Should you wish to have this claim reviewed, you may file a written request with the CNBC Plan Committee c/o Igler & Dougherty, P.A., 500 N. Westshore Boulevard, Suite 1010, Tampa, Florida 33609, within sixty (60) days from your receipt of this letter of denial.**

(Emphasis in original). (A copy of the Plan's Administrative Committee's written denial of Plaintiff Guididas' claim is attached hereto as Exhibit D).

46. On March 10, 2011, within the 60-day review period, Plaintiff Guididas requested a "full and fair review" of the March 2, 2011 denial in writing pursuant to Section 19 of the Plan. (A copy of Plaintiff Guididas' March 10, 2011 written request for review is attached hereto as Exhibit E). By letter dated May 9, 2011, the Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial of your claim pursuant to Sections 1, 18 and 19 of the Community National Bank Corporation KSOP Plan for the reasons set forth in the denial letter of March 2nd." (A copy of the Plan's Administrative Committee's written denial of Plaintiff Guididas' request for review is attached hereto as Exhibit F).[1]

---

[1] See also the allegations set out in paragraphs 101-102. The Plan's lawyer, Valerie J. Hamm, Esquire, commented in the May 9, 2011 denial letter that Plaintiff Guididas had submitted "no other evidence" in support of his claim and failed to respond to her letter "inviting the submission of additional materials" to support the claim. Yet, as detailed in paragraph 102, Ms. Hamm had already successfully blocked Plaintiff Guididas' attempt to obtain documentary support for his claim from the OCC seven months earlier.

47.    Accordingly, Plaintiff Guididas has fully exhausted his administrative remedies that are set forth in Section 19 of the Plan which provides for a two-step review process. Plaintiff Guididas submitted his initial claim for benefits on November 9, 2010, setting out in detail the fiduciary duties that he contends were breached and caused the loss of the majority of his retirement savings.  The Plan denied that any fiduciary duties had been breached and denied the claim.   Within 60 days of that denial, Plaintiff Guididas timely filed his written request for review of the denial which was also rejected by the Plan.  Thus, pursuant to the Participant's Handbook – specifically the section titled "*How are Questions and Claims Regarding Benefits Handled?*" – Plaintiff Guididas may pursue this claim in federal court:

> If you have a claim for benefits, which is denied or ignored, in whole or in part, you may file suit in a state or federal court.  If it should happen that the KSOP fiduciaries misuse the Plan's money, . . . you may . . . file suit in a federal court."  See Exhibit B, p. 22.

**Exhaustion of Remedies by all other Named Plaintiffs**

48.    Each and every named Plaintiff in this action completed the same process as Plaintiff Guididas did and thereby fully exhausted their administrative remedies set forth in Section 19 of the Plan.  Each named Plaintiff submitted an initial claim for benefits, setting out in detail the fiduciary duties that were breached and caused the loss of the majority of their retirement savings.  In response to each of the named Plaintiff's claims, the Plan denied that any fiduciary duties had been breached and denied the claims.  Within 60 days of each of those denials, the named Plaintiffs timely filed written requests for review of the denials which were also rejected by the Plan.  The letters documenting the claims and the denials are not attached hereto given the voluminous

nature of the documents, but they are, in all material respects, identical to the letters attached hereto as Exhibits C through F.  However, the dates of the letters sent by each named Plaintiff and received from the Plan Administrative Committee as to each claim are set out next for the purpose of thoroughly alleging the exhaustion of each Plaintiff's administrative remedies.

49.    On November 9, 2010 Plaintiff Jean Mattes presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim.  On March 10, 2011, within the 60-day review period, Plaintiff Mattes requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Mattes exhausted her administrative remedies prior to filing this suit.

50.    On November 9, 2010 Plaintiff Lisa Brusger presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Brusger requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Brusger exhausted her administrative remedies prior to filing this suit.

14

51.     On November 9, 2010 Plaintiff Carolyn Bartlett presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Bartlett requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Bartlett exhausted her administrative remedies prior to filing this suit.

52.     On November 9, 2010 Plaintiff Kathryn J. Bronson presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Bronson requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Bronson exhausted her administrative remedies prior to filing this suit.

53.     On November 9, 2010 Plaintiff Lori Clemons presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Clemons requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated

May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter." Thus, Plaintiff Clemons exhausted her administrative remedies prior to filing this suit.

54.    On November 9, 2010 Plaintiff Kevin Corrigan presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan. On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Corrigan requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan. By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter." Thus, Plaintiff Corrigan exhausted his administrative remedies prior to filing this suit.

55.    On November 9, 2010 Plaintiff Michelle Crawford presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan. On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Crawford requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan. By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter." Thus, Plaintiff Crawford exhausted her administrative remedies prior to filing this suit.

56.    On November 9, 2010 Plaintiff Susan Feeheley presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan. On March 2,

2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Feeheley requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Feeheley exhausted her administrative remedies prior to filing this suit.

57.     On November 9, 2010 Plaintiff Lydia Freyeisen presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Freyeisen requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Freyeisen exhausted her administrative remedies prior to filing this suit.

58.     On November 9, 2010 Plaintiff Alexander Gaudio presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Gaudio requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial

17

letter." Thus, Plaintiff Gaudio exhausted his administrative remedies prior to filing this suit.

59.    On November 9, 2010 Plaintiff Candance Hagadorn presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Hagadorn requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Hagadorn exhausted her administrative remedies prior to filing this suit.

60.    On November 9, 2010 Plaintiff Leanne Hanson presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Hanson requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Hanson exhausted her administrative remedies prior to filing this suit.

61.    On November 9, 2010 Plaintiff Jessica Ivanenko presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On

March 10, 2011, within the 60-day review period, Plaintiff Ivanenko requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Ivanenko exhausted her administrative remedies prior to filing this suit.

62.     On November 9, 2010 Plaintiff Julia Kozel presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Kozel requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Kozel exhausted her administrative remedies prior to filing this suit.

63.     On November 9, 2010 Plaintiff Rhonda Leblanc presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Leblanc requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Leblanc exhausted her administrative remedies prior to filing this suit.

64.     On April 7, 2011 Plaintiff Desiree Miller presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On June 16, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On July 1, 2011, within the 60-day review period, Plaintiff Miller requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated August 8, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Miller exhausted her administrative remedies prior to filing this suit.

65.     On November 9, 2010 Plaintiff Alberta Moore presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Moore requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Moore exhausted her administrative remedies prior to filing this suit.

66.     On November 9, 2010 Plaintiff Jack Shultz presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Shultz requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the

denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Shultz exhausted his administrative remedies prior to filing this suit.

67.     On November 9, 2010 Plaintiff Feina Stekol presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.   On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Stekol requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.   By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Stekol exhausted her administrative remedies prior to filing this suit.

68.     On November 9, 2010 Plaintiff Claudette Swetic presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.   On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Swetic requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.   By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Swetic exhausted her administrative remedies prior to filing this suit.

69.     On November 9, 2010 Plaintiff Judith Waterhouse presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.   On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Waterhouse

requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."  Thus, Plaintiff Waterhouse exhausted her administrative remedies prior to filing this suit.

70.     On November 9, 2010 Plaintiff Rita Williams presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Williams requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Williams exhausted her administrative remedies prior to filing this suit.

71.     On November 9, 2010 Plaintiff Moyean Wilson presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Wilson requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Wilson exhausted her administrative remedies prior to filing this suit.

72.     On November 9, 2010 Plaintiff Renee Yoder presented a written claim to the Plan's Administrative Committee pursuant to Section 19 of the Plan.  On March 2, 2011, the Plan's Administrative Committee, through its lawyers, denied the claim. On March 10, 2011, within the 60-day review period, Plaintiff Yoder requested a "full and fair review" of the denial in writing pursuant to Section 19 of the Plan.  By letter dated May 9, 2011, The Plan Administrative Committee, through its lawyers, "reaffirm[ed] the denial" of the claim "for the reasons set forth in the [original] denial letter."   Thus, Plaintiff Yoder exhausted her administrative remedies prior to filing this suit.

### V.  THE PLAN

73.     The Plan became effective on January 1, 1997. The Plan is an "employee pension benefit plan" with the meaning of ERISA §3(2)(A), 29 U.S.C. §1002(2)(A). Further, it is an "eligible individual retirement account plan" with the meaning of ERISA §407(d)(3), 29 U.S.C. §1107(d)(3), and also a "qualified cash or deferred arrangement within the meaning of the Internal Revenue Code §401(k), 26 U.S.C. §401(k). While the Plan is not named as a party to this action, the relief requested in this action is for the benefit of the Plan pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).

74.     At all relevant times, the Plan had two separate components: (1) a contributory portion, which consisted of participant contributions and which vested immediately upon the contribution; and (2) a matching contribution, which consisted of the employer contribution and which vested upon the completion of certain time in service conditions.

75.     Under the Plan, salaried employees who are at least 18 years of age and perform at least 1,000 hours of service in a Plan year may contribute to the Plan.

76.     An employee benefit plan, including the Plan here, must be established and maintained pursuant to a written instrument. ERISA §402(a)(1), 29 U.S.C. §1102(a)(1).  During the Class Period, the Plan was maintained under three instruments:

(i)   2001 Plan Documents (attached as Exhibit A, hereto);

(ii)  2006 Amendment to Plan; and,

(iii) 2009 Plan Documents to Plan.

77.     ERISA further requires that every participant in an employee benefit plan be given a summary plan description. The description currently in force for the Plan is the Participants Handbook, dated May 2009. (A true and accurate copy of the description is attached hereto as Exhibit B).

78.     According to the Plan, amended and restated as of January 1, 1997, dated September 17, 2001, the Plan will be administered by a Board of Trustees (the "Trustee") and Administrative Committee (the "Committee"), each composed of individuals appointed by the Board of Directors to serve at its pleasure. The Trustee shall be named fiduciary with authority and responsibility for the management and investment of the Trust assets. The Trustee shall be responsible for investing the Trust Assets under the Plan and shall establish a funding policy and method of acquiring CNBC stock for the Trust in a manner that is consistent with the objectives of the Plan and the requirements of ERISA.

79.     The Plan documents titled "Participants' Handbook" further describes that the Plan was adopted to enable participating personnel to accumulate funds for retirement through a diversified portfolio of CNBC stock and alternative investments. As expressly stated, the goal of the Plan is to provide its participants with future economic security.

80.     As further set forth in Plan documents the investment funds are determined by the Plan Trustees and may include, but are not limited to, (1) the Bank Stock Fund (cash), (2) Bank Stock (shares), (3) alternative investment account a/k/a the Hartford funds, and (4) any other funds which the Trustees may establish from time to time. The Bank stock fund and the Bank Stock had a principal goal of capital appreciation through investment in Company Stock.

81.     Committee was designated the Plan Administrator, but in January 2009, CNBC changed the plan to designate itself as the Plan Administrator under ERISA.

82.     The participants' handbook further provides that the "people who operate your Plan, called "fiduciaries" of the Plan, must perform their duties responsibly, carefully, and in the best interest" of other Plan participants and beneficiaries.

83.     In addition to being an employee pension benefit plan, as defined by ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), the Plan purports to be an employee stock ownership plan ("ESOP"). An ESOP is generally an ERISA plan that invests primarily in "qualifying employer securities." 29 U.S.C. § 1107 (d)(6)(A). For a plan to qualify as an ESOP, the plan must meet numerous requirements set forth in both ERISA and the Internal Revenue Code. Even if the Plan qualifies as an ESOP, Plan fiduciaries may not invest in employer securities blindly and without regard to existing circumstances.

84.    While the duty to diversify does not apply with equal force to company stock investments per se in an ESOP, the fiduciaries remain bound by the other core ERISA fiduciary duties, including the duties to act loyally, prudently, and for the exclusive purpose of providing benefits to plan participants.

85.    The Plan was formally discontinued and terminated as of the end of the business day on November 30, 2009.  See Exhibit G.

## VI. FIDUCIARY

86.    ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant ERISA §402(a)(1), 29 U.S.C. §1102(a)(1). The person named as the "administrator" in the plan instrument is automatically a named fiduciary, and in absence of such a designation, the sponsor is the administrator. ERISA §3(16)(A), 29 U.S.C. §1002(16)(A).

87.    ERISA also treats as fiduciaries not only persons explicitly named as fiduciaries under §402(a)(1), but also any other persons who in fact perform fiduciary functions. Thus, a person is a fiduciary to the extent "(I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting the management or disposition of its assets or (ii) he has any discretionary authority or responsibility in the administration of the plan." ERISA §3(21)(A)(I), 29 U.S.C. §1002(21)(A)(I).

88.    Each of the Defendants was a fiduciary with respect to the Plan and owed fiduciary duties to the Plan and its participants under ERISA in the manner and to the extent set forth in the Plan's documents, through their conduct, and under ERISA.

26

89.     As fiduciaries, Defendants were required by ERISA §404(a)(1), 29 U.S.C. §1104(a)(1) to manage and administer the Plan, and the Plan's investments solely in the interest of the Plan's participants and beneficiaries and with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

90.     These standards are confirmed in the Plan documents.  See Exhibits A and B.

91.     Further, ERISA permits the fiduciary functions to be delegated to insiders without an automatic violation of the rules against prohibited transactions, ERISA §408c(3), 29 U.S.C. §1108c(3), but insider fiduciaries must still in fact act solely in the interest of participants and beneficiaries, not in the interest of the sponsor. Moreover, all Plan fiduciaries were obliged, when wearing their fiduciary hat(s) to act independently of CNBC which had no authority under the governing Plan documents to direct the conduct of any of them with respect to the Plan, its investments, or the disclosure of information between and among fiduciaries or from fiduciaries to the participants.

92.     Defendants as administrator and/or trustees, while serving in their dual roles as directors and executives of CNBC were in unique position to understand the nature or CNBC's business as well as the manner in which CNBC was running its business and that of its wholly owned subsidiary Community National Bank of Sarasota. Through their mismanagement and unsound and unsafe business practices from 2005 to

27

present, including its lending practices at the Bank, Defendants rendered the CNBC stock an inappropriate investment by the Plan

93.     The fiduciaries of the Plan repeatedly and continually failed to avoid investments in CNBC and repeatedly and continually failed to accurately report the mismanagement within CNBC and its wholly owned subsidiary Community National Bank of Sarasota.

94.     The fiduciaries themselves or in concert with others operated CNBC and Community National Bank of Sarasota since at least 2005 in such a manner as to be considered unsafe and unsound by federal regulators and with such disregard for the interests of participants of the Plan as to ignore or otherwise disregard their fiduciary responsibility and avoid investments of Plan assets in unsound and unsafe investment to include the continual approval of loans without proper underwriting or the approval of loans even though such loans were determined to be too risky under the bank's own credit lending policies.

95.     For example, in 2008, the Office of the Comptroller of the Currency of the United States of America ("OCC") in its obligations to protect the depositors, customers and shareholders of Community National Bank of Sarasota entered into an Agreement with the Bank whereby the OCC "found unsafe and unsound banking practices relating to the lending" of the Bank. The Agreement was signed by the Defendants in their capacity of directors and officers of the Bank.

96.     On information and relief, the unsafe and unsound lending practices relate to various improper insider loans and other questionable banking practices engaged in by

or with the knowledge and/or complicity of Defendants and many of which were completely outside the stated loan policies of the Bank.

97.     Despite the above agreement with the OCC, Defendants failed to address unsafe and unsound practices and the Bank's critically undercapitalized condition.

98.     Upon information and belief, in completely improper effort to raise capital requirements, Defendants caused Community National Bank of Sarasota to lend them funds in order to re-invest those funds into the back so as to make it appear that capital requirements called for by the OCC were indeed met by a fresh infusion of capital.

99.     All these actions the Plan suffered millions of dollars in losses because substantial assets of the Plan were imprudently invested or allowed to be invested by Defendants in CNBC stock during the class period, knowing the distress situation facing CNBC and its wholly owned subsidiary (the Bank).

100.    In 2009, the OCC finally seized control of the Bank. The CNBC stock is now worthless and by extension the majority of Plan assets are worthless.  Plan participants have seen a catastrophic devaluation of their retirement accounts as a direct result of the actions of Defendants.

101.    When the OCC seized control of the Bank in 2009, it also seized control of the Bank's books and records, including the records that would establish the accuracy of the Plaintiffs' allegations herein.  On August 20, 2010, the Plaintiffs, through counsel, submitted a written request to the OCC for copies of the documents relevant to this action.  On September 20, 2010, Valeries J. Hamm, Esquire, counsel for the Defendants in this action, submitted a written objection to the OCC contending that the Plaintiffs

were not entitled to the documents for various reasons, including the fact that this action was previously dismissed by the Court.  Based on that objection, the OCC denied the Plaintiffs' request for records on October 6, 2010.

102.    Nevertheless, approximately seven months later, the Defendants, through their attorney, Ms. Hamm, cited the Plaintiffs' alleged failure to submit evidence in support of their claims as one of the grounds for denying their administrative review when the Defendants had already blocked the Plaintiffs' ability to obtain the evidence.

## VII.  ERISA

103.    ERISA §502(a)(2), 29 U.S.C. §1132(a)(2), provides, in pertinent part, that a civil action may be brought by a participant for relief under ERISA §409, 29 U.S.C. §1109.

104.    ERISA §409(a), 29 U.S.C. §1109(a), provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

105.    ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), authorizes individual participants to seek equitable relief from Defendants, including, without limitation, injunctive relief and, as available under applicable law, constructive trust, restitution, and other monetary relief.

106.    ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§1104(a)(1)(A) and (B), provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character ad with like aims.

107.    These fiduciary duties under ERISA §§404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence. They entail, among others:

(i) The duty to conduct an independent and thorough investigation into, and to continually monitor, the merits of all the investment alternatives of a plan, including in this instance the CNBC stock, to ensure that each investment is a suitable option for the Plan;

(ii) The duty to avoid conflicts of interest and to resolve them promptly when they do occur. A fiduciary must always administer the plan with an eye single to the interests of the participants and beneficiaries, regardless of the interests of fiduciaries themselves or the plan sponsor; and,

(iii) The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

108.    ERISA §405(a), 29 U.S.C. §1105(a), provides that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable or a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach:

(2) if, by his failure to comply with section 404(a)(1), in the administration of his specific responsibilities which gives rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

## VIII.  CLASS ACTION ALLEGATIONS

109.    Plaintiff Frank Guididas, in addition to bringing this action in his individual capacity, brings this action as a class action pursuant to Rules 23(a), and (b)(1) through (3) of the Federal Rules of Civil Procedure on behalf of himself[2] and the following class of persons similarly situated (the "Class"):

> All persons, other than Defendants, who were participants in or beneficiary of the Plan at any time between January 1, 2005 and the present and whose accounts included investments in CNBC.

110.    Plaintiff does not know the exact number of class members because such information is in the exclusive control of Defendants and/or others acting in concert with them.  However, due to the nature of trade and commerce involved, Plaintiff believes that

---

[2] Each named Plaintiff in this action is qualified to serve as the Class Representative.  In the event Plaintiff Frank Guididas cannot serve for any reason or is deemed unqualified to serve, any named Plaintiff can and will be substituted in his place for purposes of representing the Class.

the number of class members is at least 75 to 100 members and is so numerous that joinder of all persons is impracticable.

111.    Plaintiff Frank Guididas satisfied the precondition for bringing this suit which required the exhaustion of administrative remedies as pled in detail in this complaint.  Having satisfied that precondition, Plaintiff Guididas met the requirement for all members of the putative class.

112.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(i)    whether Defendants each owed a fiduciary duty to Plaintiffs and members of the Class;

(ii) whether Defendants breached their fiduciary duties to Plaintiffs and members of the Class by failing to act prudently and solely in the interests of the Plan's participants and beneficiaries;

(iii) whether Defendants violated ERISA; and,

(iv) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

113.    Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other members of the Class each sustained damages arising out of the Defendants' wrongful conduct in violation of the federal law as complained herein.

114.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action, complex

33

and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

115.   Class action status in this ERISA action is warranted under Rule 23(b)(1)(B) because prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members not parties to the actions, or substantially impair or impede their ability to protect their interest.

116.   Class action treatment is superior to other means of prosecuting these claims as the prosecution of separate claims by individual class members would create a risk of inconsistent or varying adjudications or in many instances may prove cost prohibitive for the individual class member to undertake. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication, effort or expense that numerous individual actions would entail.

117.   No difficulties are likely to be encountered in the management of this class action that would preclude maintenance as a class action, and no superior alternative exists or the fair and efficient adjudication of this controversy.

118.   Defendants have acted on grounds generally applicable to the entire class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the class.

**COUNT I**
**Failure to Prudently and Loyally Manage the Plan and Plan Assets**

119.    Plaintiffs incorporate by reference paragraphs 1 through 118 as if fully set forth herein.

120.    This Count alleges fiduciary breach against Defendants.

121.    During the Class Period the Defendants were named fiduciaries pursuant to ERISA or defacto fiduciaries within the meaning of ERISA, or both. Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence.

122.    The scope of the fiduciary duties and responsibilities of the Defendants included managing the Plan's assets for the sole and exclusive benefit of Plan participants and beneficiaries, and with the care, skill, diligence, and prudence required by ERISA. The Defendants were directly responsible or, among other things, selecting prudent investment options, eliminating imprudent options, determining how to invest employer contributions to the Plan and directing the Trustee regarding the same, evaluating the merits of the Plan's investments on an ongoing basis, and taking all necessary steps top ensure the Plan assets were invested prudently.

123.    Yet, contrary to their duties and obligations under the Plan documents and ERISA, the Defendants failed to loyally and prudently manage the assets of the Plan. Specifically, during the Class Period, these Defendants knew o should have known that CNBC no longer was a suitable and appropriate investment for the Plan, but was, instead an unsafe and unsound investment in light of the CNBC and its wholly owned subsidiary's improper business and banking practices. Nonetheless, these Defendants continued to offer CNBC stock as an investment option fro participant contribution and

match all employee contributions with CNBC stock, require participant themselves to invest in CNBC stock, and severely restrict participants' ability to sell shares of CNBC stock. They did so despite their knowledge of CNBC and its wholly owned subsidiary's mismanagement and unsafe and unsound banking practices and exposed the Plan's investment in the stock to huge risk and certain losses once the truth was revealed.

124.    The Defendants were obliged to prudently and loyally manage all of the Plan's assets. Their duties of prudence and loyalty were especially significant with respect to company stock because during the Class Period, a sizeable portion of the Plan's assets were invested in CNBC.

125.    The Defendants, in light of the continuing unsafe and unsound banking practices of CNBC's wholly owned subsidiary and the OCC's ever tightening regulatory noose required the Defendants to exercise even greater care in managing the Plan's assets.

126.    The Defendants were obligated to discharge their duties with respect to the Plan with care, prudence, skill, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

127.    Given the conduct of the CNBC and its wholly owned subsidiary, the Defendants could not possibly have acted prudently when they continued to invest the Plan's assets in CNBC stock because among other reasons:

(i)   The Defendants knew of and/or failed to investigate serious corporate mismanagement occurring at CNBC and its wholly owned subsidiary that the CNBC stock an extremely risky and imprudent investment for the Plan;

(ii)   The risk associated with the investment in CNBC stock during this time of serious corporate mismanagement was an extraordinary risk, far above and beyond the normal acceptable risk associated with investment in company stock;

(iii) This abnormal investment risk could not have been known by Plan participants, and the Defendants knew that it was unknown to them, because the fiduciaries never disclosed it and knew the participants were relying to their detriment on the information released by the Defendants;

(iv)   Knowing of this extraordinary risk, and knowing that the Plan participants did not know it, the Defendants had a duty to avoid permitting the Plan or any participant from investing Plan assets in CNBC stock; and,

(v)      Knowing that the Plan was not a diversified portfolio, but was heavily invested in CNBC stock, the Defendants had a heightened responsibility to divest the Plan of CNBC stock if it became or remained imprudent.

128.   The fiduciary duty of loyalty entails, among other things, a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with the single-minded devotion to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries or the plan sponsor. The fiduciaries on the Plan fell below the above standard. And breached their

37

duty to avoid conflicts or to promptly resolve them when they arise by failing to engage independent advisors who could make independent judgments concerning the Plan's investment in CNBC; failing to notify appropriate federal agencies of facts and circumstances that made the CNBC stock an unsuitable investment for the Plan; failing to take steps as necessary to ensure that participants' interests were loyally and prudently served; and placing the interests of themselves and CNBC above the interests of participants with respect to the Plan's investment in CNBC stock.

129.    Defendants further breached this duty by continuing to offer CNBC stock as an investment option for the Plan for participant contributions, and for much of the Class Period requiring participant contributions to be invested in CNBC stock; continuing to invest employer matching contributions to be invested in CNBC stock; for both employer and employee contributions to CNBC stock, in great percentages in CNBC stock despite the availability of other more suitable and available investments options; and by placing restrictions on participants ability to divest their Plan accounts which contained holdings of CNBC stock.

130.    As a consequence of these breaches, the Plan suffered great losses. If the Defendants had properly discharged their duties in accordance with the above standards of conduct, the losses suffered by the Plan would have been avoided or minimized. Therefore, as a direct and proximate result of the breaches of fiduciary duty, the Plan and indirectly the participants and other Class members lost millions of dollars of retirement savings.

131.    Defendants are liable to restore the loses to the Plan caused by their breaches of fiduciary duty.

## COUNT II
### Failure to Provide Complete and Accurate Information

132.    Plaintiffs incorporate by reference paragraphs 1 through 118 above, as if fully set froth herein.

133.    During the Class Period, Defendants were named fiduciaries or de facto fiduciaries with the meaning of ERISA. Thus, they were bound by the duties of loyalty, exclusive purpose and prudence.

134.    The scope of Defendants duties included disseminating Plan documents and/or Plan related information to participants regarding the Plan and its assets, the duty to ensure that the Plan's investments, including it investments in employer stock was made prudently.

135.    The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, and to disclose information that participants need in order to exercise their rights and interests under the Plan. This duty includes the obligation to provide participants and beneficiaries of the Plan with complete and accurate information. This duty applies with equal force to all the Plan's investment options, including investment in CNBC stock. Defendants were obliged to provide participants with complete and accurate information concerning all of the Plan's assets.

136.    Defendants breached this duty to inform participants by failing to provide complete and accurate information regarding CNBC and CNBC stock, and, generally, by

conveying through statements inaccurate information regarding the soundness of CNBC stock, and the prudence of investing retirement contributions in the stock.

137.    As a consequence of this failure, participants lacked sufficient information to make informed decisions regarding their investment of their retirement savings in CNBC stock, or to appreciate that under circumstances known to the fiduciaries but not known by participants, that CNBC was inherently unsuitable and inappropriate investment option for Plan assets. As a result the Plan, and indirectly the Plaintiffs and other Class members, suffered losses that were the direct and proximate cause of the breaches of fiduciary duty alleged herein.

138.    Defendants are liable to restore the losses to the Plan caused by their breaches of fiduciary duties and to provide equitable relief as appropriate.

## COUNT III
### Failure to Monitor Fiduciaries

139.    Plaintiffs incorporate by reference paragraphs 1 through 118 above, as if fully set froth herein.

140.    During the Class Period, Defendants were named fiduciaries or de facto fiduciaries with the meaning of ERISA. Thus, they were bound by the duties of loyalty, exclusive purpose and prudence.

141.    The scope of fiduciary responsibilities of Defendants included the responsibility to appoint, and remove, and thus to monitor the performance of fiduciaries.

142.    Under ERISA, fiduciaries must monitor to ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the

investment and holding of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

143.    Defendants breached their duty to monitor by, among other things, failing with respect to the Plan's investment in CNBC stock to prevent the sizeable losses to the Plan's assets as a result of its investment in CNBC stock; failing to ensure that other fiduciaries they were monitoring appreciated the true extent of CNBC's highly risky and inappropriate business practices and the likely impact such practices would have on the value of CNBC stock and ultimately on the Plan; and failing to remove appointees whose performance became inadequate.

144.    As a consequence of these breaches, the Plan suffered sizeable losses. If Defendants had discharged their fiduciary duties to monitor as described above, the losses suffered by the Plan would have been avoided or minimized. As a direct and proximate cause of the breaches, the Plan, and indirectly the Plaintiffs and the other Class Members, lost their retirement savings. Defendants are liable to restore the losses to the Plan caused by these breaches and to provide other equitable relief as appropriate.

Date: November 8, 2011.

Respectfully submitted,

Trial Counsel

/s/ Kimberly L. Boldt, Esquire
    KIMBERLY L. BOLDT
    Florida Bar No. 957399
**BOLDT LAW FIRM**
2001 Tyler Street, Suite 2
Hollywood, Florida
Telephone: (954) 921-2225

41

Facsimile: (954) 921-2232
kboldt@boldtlawfirm.com
Co-Counsel for Plaintiffs

-and-

/s/ Alexander Angueira, Esquire
ALEXANDER ANGUEIRA
Florida Bar No. 0716091
**ALEXANDER ANGUEIRA, P.L.L.C.**
Plaza 57, 7301 S.W. 57th Court
Suite 515
South Miami, Florida 33143
Office: (305) 357-9031
Fax: (305) 357-9050
alex@angueiralaw.com
Co-Counsel for Plaintiffs

-and-

/s/ Thomas A. Culmo, Esquire
   THOMAS A. CULMO
   Florida Bar No. 775479
**CULMO TRIAL ATTORNEYS, P.A.**
4090 Laguna Street
Coral Gables, Florida 33146
Telephone: (305) 200-5281
Fax: (305) 200-5476
tom@culmotrialattorneys.com
Co-Counsel for Plaintiffs