**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**FRANK R. GUIDIDAS, et al.,**

    **Plaintiffs,**

v.                                                 Case No.  8:11-cv-2545-T-30TBM

**COMMUNITY NATIONAL BANK**
**CORPORATION, et al.,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss/Alternative Motion for Summary Judgment (Dkt. 10), Plaintiffs' Response in opposition (Dkt. 18), and Defendants' Reply (Dkt. 27).  The Court, having reviewed the motion, response, reply, and being otherwise advised of the premises, concludes that the motion to dismiss should be granted in part and denied in part.

### BACKGROUND

Plaintiffs' class action complaint is brought under the Employee Retirement Income Security Act ("ERISA").  Plaintiffs were participants of the Community National Bank Corporation Employee Stock Ownership Plan (the "Plan").  The Plan is a retirement plan sponsored by Defendant Community National Bank Corporation n/k/a Moody Business


Partners, Inc. ("CNBC").[1] Plaintiffs' claims arise from the failure of Defendants, who are/were fiduciaries of the Plan, to act solely in the interest of the participants and beneficiaries of the Plan, and to exercise the required skill, care, prudence, and diligence in administering the Plan and the Plans' asserts during the period of time of January 2005, to the present.

Specifically, Plaintiffs allege in Count I that Defendants, who were responsible for the investment of the assets of the Plan, breached their fiduciary duties to Plaintiffs in violation of ERISA by failing to prudently and loyally manage the Plan's investments in CNBC stock. In Count II, Plaintiffs allege that Defendants, who were responsible for communicating with participants regarding the Plan's assets, failed to notify participants of the true risks of investing their retirement savings in CNBC stock. In Count III, Plaintiffs allege that Defendants, who were responsible for the selection, removal, and thus, monitoring of the Plan's other fiduciaries, failed to properly monitor the performance of their fiduciary appointees and remove and replace those whose performance was inadequate.

Plaintiffs allege that the individual Defendants are or were fiduciaries of the Plan within the meaning of ERISA and the Plan documents. These Defendants are or were either members of CNBC's Board of Directors and/or were senior management of CNBC and had exclusive control and direction over the Plan.

---

[1] CNBC is a parent company for Community National Bank of Sarasota County, Venice, Florida ("Bank").

The Plan at issue became effective on January 1, 1997, and is an "employee pension benefit plan" within the meaning of ERISA. At all relevant times, the Plan had two separate components: (1) a contributory portion, which consisted of participant contributions and which vested immediately upon the contribution; and (2) a matching contribution, which consisted of the employer contribution and which vested upon the completion of certain time in service conditions. Under the Plan, salaried employees who were at least 18 years of age and performed at least 1,000 hours of service in a Plan year could contribute to the Plan.

As further stated in the Plan documents, the investment funds were determined by the Plan Trustees and included, but were not limited to: (1) the Bank Stock Fund (cash); (2) Bank Stock (shares); (3) alternative investment account a/k/a the Hartford funds; and (4) other funds which the Trustees could establish from time to time. The Bank Stock Fund and Bank Stock had a principal investment goal of capital appreciation through investment in Company Stock. The alternative investments account was a diversified portfolio intended to provide an opportunity for income and account growth. With the consent of the Trustee, a participant could direct the Trustee with respect to the investment of his existing 401(k) and salary deferral accounts. In such event, up to 50% of the contributions could be directed into Company Stock.

In addition to being an employee pension benefit plan, the Plan purported to be an employee stock ownership plan ("ESOP"). An ESOP is generally an ERISA plan that invests primarily in "qualifying employer securities."

This case is at issue upon Defendants' motion to dismiss. Defendants argue that Plaintiffs' claims do not contain sufficient allegations to state a claim upon which relief may be granted. Defendants also argue, among other things, that the Plan was exempt from the diversification requirements. In the alternative, Defendants argue that they are entitled to summary judgment on the named Plaintiffs' claims, which were considered and rejected by the Plan Administrative Committee.

For the reasons set forth below, Defendants' motion to dismiss is granted with respect to Counts II and III of Plaintiff's Complaint. The motion is otherwise denied.

## DEFENDANTS' MOTION TO DISMISS

I.   Motion to Dismiss Standard

Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994). Nonetheless, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While in the ordinary case a plaintiff may find the bar exceedingly low to plead only more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action," it is clear that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1959, 1965; *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974, n. 43 (11th Cir. 2008) (noting the abrogation of the "no set of facts" standard and holding *Twombly* "as a further articulation of the standard by which to evaluate the sufficiency of all claims"). Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

II.  <u>General Duties of an ERISA Fiduciary</u>

Congress passed ERISA in 1974, in part, "to establish minimum standards of fiduciary conduct for Trustees, Administrators and others dealing with retirement plans ... and to improve the equitable character and soundness of private pension plans." H.R.Rep. No. 93–533 (1974), as reprinted in 1974 U.S.C.C.A.N. 4639, 4655. ERISA defines a fiduciary as follows: "[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

The general principles regarding an ERISA fiduciary's duties are well established. An ERISA fiduciary is required to discharge his or her duties with respect to a Plan: (1) "solely in the interest of the participants and beneficiaries" 29 U.S.C. § 1104(a)(1); (2) for the exclusive purpose of providing benefits to participants and their beneficiaries and

defraying reasonable expenses of administering the plan, 29 U.S.C. § 1104(a)(1)(A); (3) "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," 29 U.S.C. § 1104(a)(1)(B); (4) "by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so," 29 U.S.C. § 1104(a)(1)(C); and (5) "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter." 29 U.S.C. § 1104(a)(1)(D).

These general duties for an ERISA fiduciary have been modified, however, for eligible individual account plans (EIAP),[2] including ESOPs.[3] It appears undisputed, at least for purposes of Defendants' motion to dismiss, that the Plan is an ESOP and an EIAP. Since an ESOP invests mainly in an employer's securities, its fiduciaries have been exempted from the statutory duty to diversify.

III.    Count I - Prudence Claim

Count I of Plaintiffs' Complaint alleges that Defendants failed to prudently and loyally manage the Plan. Defendants' initial argument is that Plaintiffs' allegations are

---

[2] An eligible individual account plan ("EIAP") is "(i) a profit-sharing, stock bonus, thrift, or savings plan; (ii) an employee stock ownership plan; or (iii) a money purchase plan which was ... invested primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(3)(A).

[3] As stated above, an ESOP is a stock bonus plan "which is designed to invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6).

insufficient to state a claim. The Court disagrees. Plaintiffs allege that each Defendant: (1) acted as a fiduciary; (2) breached his or its fiduciary duties; and (3) caused a loss to the Plan. The Complaint contains sufficient allegations of facts with respect to these elements.

The crux of Defendants' argument with respect to this claim, however, is that Plaintiffs' allegations are insufficient because ERISA does not require a fiduciary to diversify a plan's investment in employer stock in order to meet the duty of prudence. This argument fails under the Eleventh Circuit's very recent opinion, dated May 8, 2012, in *Lanfear v. Home Depot, Inc.*, --- F.3d ---, 2012 WL 1580614 (11th Cir. May 8, 2012), holding:

> Although a fiduciary is generally required to invest according to the terms of the plan, when circumstances arise such that continuing to do so would defeat or substantially impair the purpose of the plan, a prudent fiduciary should deviate from those terms to the extent necessary. Because the purpose of a plan is set by its settlors (those who created it), that is the same thing as saying that a fiduciary abuses his discretion by acting in compliance with the directions of the plan only when the fiduciary could not have reasonably believed that the settlors would have intended for him to do so under the circumstances. That is the test.[4]

The Eleventh Circuit also stated that "an abuse of discretion is an element of a claim that the fiduciary's decision was imprudent." And that "[u]nless a plaintiff pleads facts sufficient to raise a plausible inference that the fiduciary abused its discretion by following the plan's directions, the complaint fails to state a valid claim and a motion to dismiss should be granted." The Eleventh Circuit then affirmed the district court's dismissal of the plaintiffs' prudence claim because their allegations were based mainly on the stock

---

[4] This is the first time the Eleventh Circuit has ruled on this issue and neither party had the benefit of this opinion at the time they filed their papers.

fluctuations in Home Depot's stock, which were insufficient to establish that the fiduciaries abused their discretion by continuing to invest in or hold employer securities in compliance with the terms of the plan.

Here, Plaintiffs allege that Defendants operated CNBC and Community National Bank of Sarasota ("Bank") since at least 2005 in such a manner as to be considered unsafe and unsound by federal regulators and with such disregard for the interests of participants of the Plan as to ignore or otherwise disregard their fiduciary responsibility and avoid investments of Plan assets in unsound and unsafe investment.  Plaintiffs allege that Defendants continued to approve loans without proper underwriting or that were deemed too risky under Bank's own credit lending policies.

For example, Plaintiffs allege that in 2008, the Office of the Comptroller of the Currency of the United States of America ("OCC") entered into an agreement with CNBC whereby the OCC found unsafe and unsound banking practices relating to the lending of CNBC.  The agreement was signed by Defendants in their capacity as directors and officers of CNBC.  Plaintiffs allege that despite the agreement with OCC, Defendants failed to address unsafe and unsound practices and Bank's critically undercapitalized condition. And Defendants caused Bank to lend them funds in order to re-invest those funds so as to make it appear that capital requirements called for by the OCC were met.

Plaintiffs allege that in 2009, OCC seized control of Bank. And that the CNBC stock is now worthless and by extension, the majority of the Plan asserts are worthless.[5] Plaintiffs allege that Defendants knew that CNBC was no longer a suitable and appropriate investment for the Plan, but was, rather, an unsafe and unsound investment in light of CNBC's improper business and banking practices. Plaintiffs allege that Defendants continued to offer CNBC stock as an investment option despite their knowledge.

The Court concludes that these allegations are sufficient to state a claim because, taken as true, which the Court must assume at this stage, they demonstrate that Defendants "abused their discretion by following the [P]lan's directions." *Id.* Accordingly, Defendants' motion to dismiss Count I of Plaintiffs' Complaint must be denied.

IV.   <u>Count II - Failure to Provide Complete and Accurate Information</u>

Count II of Plaintiffs' Complaint alleges that Defendants breached their duty to inform participants of the Plan by "failing to provide complete and accurate information regarding CNBC and CNBC stock, and generally, by conveying through statements inaccurate information regarding the soundness of CNBC stock, and the prudence of investing retirement contributions in the stock." Defendants argue that this claim should be dismissed under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

---

[5] The Bank was placed in receivership on August 7, 2009, and the majority of its assets sold to Stearns Bank.

The Court concludes that, although it does not agree with Defendants that this claim is subject to a heightened pleading requirement, the claim is bereft of necessary factual allegations and is tantamount to "unadorned, the-defendant-unlawfully-harmed-me accusation[s]", which are insufficient under *Iqbal* as set forth above. Specifically, Plaintiffs have not identified any facts with respect to an individual Defendant and just generally allege that "Defendants" conveyed through "statements" inaccurate information regarding the soundness of CNBC stock.

Also, it is important to note that, although "an ERISA fiduciary may be liable for withholding information from plan participants," the Eleventh Circuit is reluctant "to create a duty to provide participants with nonpublic information pertaining to specific investment options." *Lanfear*, 2012 WL 1580614 (internal citations and quotations omitted).

Accordingly, Defendants' motion to dismiss Count II of Plaintiffs' Complaint is granted and this claim is dismissed without prejudice. Plaintiffs may move to amend their complaint to assert this claim if, as a result of discovery, they have <u>sufficient allegations of fact</u> to support this claim.

V.    <u>Count III - Failure to Monitor Fiduciaries</u>

Plaintiffs allege in Count III of their Complaint that "Defendants breached their duty to monitor by, among other things, failing with respect to the Plan's investment in CNBC stock to prevent the sizeable losses to the Plan's assets as a result of its investment in CNBC stock; failing to ensure that other fiduciaries they were monitoring appreciated the true extent of CNBC's highly risky and inappropriate business practices . . . and failing to remove

appointees whose performance became inadequate." Defendants argue, among other things, that this claim fails to contain any facts as to any one Defendant's specific actions, i.e., Defendants are merely lumped together and Plaintiffs do not state any facts as to which fiduciary was not being monitored and which appointee was performing inadequately.

The Court concludes that, like Count II, this claim does not contain sufficient factual allegations to comply with *Iqbal*. Accordingly, Defendants' motion to dismiss Count III of Plaintiffs' Complaint is granted and this claim is dismissed without prejudice. Plaintiffs may move to amend their complaint to assert this claim if, as a result of discovery, they have sufficient allegations of fact to support this claim.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants' motion alternatively moves for summary judgment. Defendants' arguments in favor of summary judgment are terse, based on an incomplete record, and premature. Accordingly, this motion is denied without prejudice to renew the motion during the appropriate time after discovery.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss/Alternative Motion for Summary Judgment (Dkt. 10) is granted in part and denied in part as set forth herein.

2. Counts II and III of Plaintiffs' Complaint are dismissed without prejudice.

3. Defendants shall file an answer to Count I of Plaintiffs' Complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on May 10, 2012.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2011\11-cv-2545.mtdismiss10.frm